UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CHAINWORKS, INC.,

       Plaintiff,

                                                  File No.  1:05-CV-135

v.

                                                  HON. ROBERT HOLMES BELL

WEBCO INDUSTRIES, INC.,

       Defendant.
                                     /

## **O P I N I O N**

Before the Court is Defendant Webco Industries, Inc. ("Webco") motion for reconsideration of the Court's February 24, 2006 Opinion and Order. In the February 24, 2006 Opinion the Court granted Plaintiff Chainworks, Inc. ("Chainworks") motion for summary judgment on Chainworks' breach of contract claim and Webco's six counterclaims alleging breach of contract, account stated, unjust enrichment, promissory estoppel, fradulent/negligent misrepresentation, and fraudulent suppression. As a result, the Court entered a declaratory judgment that Chainworks did not owe Webco $301,949.78 and had fulfilled its obligation under the parties' 2004 contract. Webco contends that, in light of certain "new evidence," the Court should reconsider its decision granting Chainworks' dispositive motion. For the reasons that follow, Webco's motion is denied.

I.

The Court's local rules provide that "motions for reconsideration which merely present the same issues ruled upon by the Court shall not be granted. The movant shall not only demonstrate a palpable defect by which the Court and the parties have been mislead, but also show that a different disposition of the case must result from a correction thereof." W.D. Mich. LCIVR 7.4(a). The Court has reviewed Plaintiff's motion, brief, and accompanying evidence and finds that there is no reason to reconsider the Court's previous opinion and order. Webco has failed to demonstrate a palpable defect by which the Court was mislead that would necessitate a different disposition of the case.

First, according to Webco, the evidence offered to support its motion for reconsideration was not available at the time the Court originally considered the motion for summary judgment. It appears, however, that Webco had the evidence in its possession well before oral argument was held on the motion for summary judgment. Exhibit A, Chainworks Res. Br. (Docket #108). In an e-mail dated January 23, 2006, Webco's counsel explained that he had the evidence now relied upon in support of its motion for reconsideration. Exhibit A. Further, Webco's counsel apparently referred to the documents during a February 1, 2006 hearing before the Magistrate Judge. In fact, during oral argument in front of this Court, Webco's counsel specifically referenced certain passages from the documents to support its position. Although Webco was clearly aware of this evidence, at no point did it file a motion to supplement its previous response brief. If the evidence was as significant as Webco now

2

claims, it should have filed a motion to supplement its response to the motion for summary judgment, rather than waiting to bring this evidence forward at this late stage. A motion for reconsideration is not the proper avenue for offering evidence that was previously available but for some unknown reason was not presented earlier.

Second, a review of the evidence does not reveal a palpable defect by which the Court was mislead and does not show that a different disposition of the case is required. The evidence relied upon by Webco is directed toward demonstrating that Chainworks' notice of breach was not reasonable and that Chainworks breached a duty of good faith under the parties' contract. In the Court's previous opinion, it held that Chainworks' March 1, 2004 memo and its identically-worded September 1, 2004 memo clearly advised Webco that it considered the surcharges and price increase to be a breach of contract and complied with the requirements and underlying policies of MICH. COMP. LAWS § 440.2607(3)(a), the notice provision of the Uniform Commercial Code. February 24, 2006 Opinion at 28-30. None of the evidence now relied upon by Webco indicates that a different disposition of this issue should result.

Webco directs the Court to a series of e-mails and letters between Chainworks and its third party purchaser, Tenneco. Exhibits C, D, E, Webco's Br. Mot. Reconsid. (Docket #105). These documents reveal the preparations and arrangements that Chainworks made to replace Webco as its steel supplier following Webco's unauthorized price increase. The fact that Chainworks arranged for another supplier without informing Webco is irrelevant

3

to whether it complied with § 440.2607(3)(a). There is no requirement that Chainworks inform Webco that it is looking elsewhere for a future contract. Moreover, Chainworks' actions do not indicate bad faith. At best, the evidence reveals a sophisticated business entity engaging in shrewd business practices in order to arrange a new supplier after its current supplier breached the current contract. Furthermore, Webco loses sight of the fact that the correspondence it relies on occurred after it unilaterally attempted to increase the agreed upon contract price. In light of this fact, it comes as no surprise that Chainworks actively pursued a different supplier for its future steel needs and during the course of making these arrangements made references to pursuing future legal action and "kick[ing] Webco to the curb." This, however, does not evidence bad faith and merely indicates that Chainworks was looking forward to switching suppliers and was planning to pursue litigation against Webco.

Webco's reliance on *American Bumper & Mfg. Co. v. Transtechnology Corp.*, 252 Mich. App. 340, 652 N.W.2d 252 (Ct. App. 2002), and *Aqualon Co. v. MAC Equipment, Inc.* 149 F.3d 262 (4th Cir. 1998), in support of its bad faith argument is clearly misplaced. The cases are clearly distinguishable from the present case. In *American Bumper*, the court held that plaintiff failed to provide adequate notice of breach that complied with the policies of § 440.2607(3)(a). 252 Mich. App. at 256, 652 N.W.2d at 347-48. Plaintiff, an auto parts supplier, contracted with defendant to supply certain U-nuts. *Id.* at 254, 652 N.W.2d at 342. During the course of the contract, plaintiff learned that the U-nuts were failing. *Id.* After notifying defendant of the problem, plaintiff cancelled the contract. *Id.* Plaintiff did not take

any further action until it sued defendant three years later. *Id.* at 652 N.W.2d at 343. The court refused to adopt either a strict or lenient interpretation of § 440.2607(3)(a) but held that plaintiff failed to satisfy the underlying policies of the notice provision and did not satisfy the U.C.C.'s standard of good faith. *Id.* at 255, 652 N.W.2d at 345-46. The court specifically noted that plaintiff's conduct, merely notifying defendant of a problem but not notifying it of the breach until the suit was filed three years later, did not satisfy the policies of the notice provision. *Id.* at 256, 652 N.W.2d at 347-48. In this case, Chainworks did not merely notify Webco of a problem and did not lie in wait for a significant period of time before pursuing legal action. Rather, after Webco unilaterally increased the steel pricing, it clearly and immediately indicated that this action was a breach of contract. Feb. 24, 2006 Opinion at 28-30. *American Bumper* does not assist Webco in demonstrating that the Court's previous ruling was erroneous.

In *Aqualon*, plaintiff, a chemical manufacturer, contracted with defendant to produce valves for use in a pneumatic conveying system. 149 F.3d at 263-64. Prior to entering into the contract, defendant provided estimates on air leakage amounts for the valves. *Id.* at 264. When the valves were constructed they leaked much more than expected. *Id.* Following a year of negotiations, it became clear that the valves could not be made to leak any less. *Id.* In spite of this, plaintiff reissued a purchase order, accepted and paid for the leaky valves. *Id.* Three years later, plaintiff filed suit for breach of contract. The court held that plaintiff was required under U.C.C. § 2-607(3) to provide notice, following acceptance, that it still

considered the transaction troublesome. *Id.* at 267. Further, the court concluded that plaintiff failed to comply with § 2-607(3) through its pre-acceptance complaints or by filing suit three years later. *Id.* at 268-69.

The facts of *Aqualon* do not bear any similarity to the facts of this case. Unlike plaintiff in *Aqualon*, Chainworks did not sit silently after a problem arose and, years later, file suit for breach of contract. Rather, as stated previously, Chainworks clearly and immediately notified Webco that it considered the price increase/surcharge to be a breach of contract. In support of its position, Webco points to the Fourth Circuit's rejection in *Aqualon* of plaintiff's argument that post-acceptance notice was unjust because time pressure forced it to accept defendant's inadequate valves and that the requirement punished it for attempting to minimize damages. *Id.* at 268. The court rejected these arguments because they were "irrelevant to the question whether [defendant] was given reasonable notice in which to cure the problem, settle the claim, or prepare for litigation." *Id.* The court continued that "nothing prevented [plaintiff] from accepting the valves to minimize damages while *also* notifying [defendant] that it should prepare for future litigation. *Id.* (emphasis in original). As fully set forth in the Court's previous opinion, that is exactly what Chainworks did. In addition to notifying Webco that it was in breach, Chainworks also continued to perform under the year-long requirements contract between the parties in order to minimize the damage from Webco's unilateral action.

6

Webco also contends that its newly filed evidence demonstrates that Chainworks breached the 100% participation condition of the 2004 contract. Webco argues that this precludes Chainworks from recovering damages for Webco's breach. This is the first time that Webco has raised this issue. A motion for reconsideration is not properly used to raise new issues that could have been raised earlier. *See Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) ("Rule 59(e) motions are aimed at *re*consideration, not initial consideration. Thus, parties should not use them to raise arguments which could, and should, have been made before judgment issued.") (emphasis in original) (quoting *FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992)); *Martin v. A.O. Smith Corp.*, 931 F. Supp. 543, 550 (W.D. Mich. 1996) (McKeague, J.) (holding that motion for reconsideration is properly treated as a motion to alter or amend judgement under Fed. R. Civ. P. 59(e) and concluding that such a motion "is not appropriately used to advance arguments or theories that could and should have been raised prior to the Court's ruling."). Webco has not offered any reason why this issue could not have been raised earlier.

Nevertheless, a review of the merits of Webco's new argument does not persuade the Court that a different result is required. Webco points to Chainworks receipt of steel from Korea during 2004 as evidence of the breach of this requirement. Webco also provides various letters in which Chainworks discusses the cost-saving potential of an "off-shore supplier," requests a price quote from a Korean source, and orders samples from Korea. Chainworks does not dispute that it purchased steel from Iljin, a Korean steel company,

7

during 2004. *See* Hinkley Aff. ¶ 3. Chainworks contends, however, that this steel was purchased for "lot testing purposes" prior to Tenneco's approval of a new supplier. Hinkley Aff. ¶ 3. Further, Hinkley also indicated that "[a]ll of Chainworks 2004 commercial requirements for SSID Tubing were satisfied by Webco." Webco has not offered any evidence disputing Hinkley's affidavit and has failed to show that Chainworks' actions constituted bad faith or a breach of contract. If the Court were to construe the investigation of alternative suppliers, the receipt of price quotes, and the securing of samples for testing purposes as a breach of contract, a business would never be able to undertake a thorough investigation of a potential new supplier before entering into a new contract.[1] Consequently, the Court is not convinced that reconsideration of its previous opinion is required.

Webco's remaining claims in support of its motion for reconsideration related to its impracticability argument and its counterclaims fail to allege a palpable defect by which the Court was mislead and do not require a different disposition of this matter. With regard to the impracticability argument, Webco relies on the contract with its supplier, Wheeling-Pittsburgh Steel. Webco has not offered any explanation as to why this argument was not

---

[1] Webco appears to recognize that Tenneco had an extensive approval process for its suppliers that required a considerable amount of preparation and time. *See* Webco's Res. Br. Summ. J. at 18 (Docket #57) (describing Tenneco's "extremely complex supplier approval process" and arguing that "it would have taken <u>months</u> to get the required PPAP approvals from Tenneco to replace [a supplier].") (emphasis in original). In light of this candid admission, Webco's attempt to argue that Chainworks' efforts during 2004 to satisfy Tenneco's "complex supplier approval process" is a breach of contract or bad faith is somewhat disingenuous.

brought to the Court's attention earlier and as stated previously, a motion for reconsideration is not properly used to assert new arguments or issues. Further, Webco's claim that the expert report of George Carothers was not previously before the Court is directly contrary to the record. *See* Exhibit V, Webco's Res. Br. Summ. J. While Webco contends that the Court did not have the opportunity to review deposition testimony from Carothers, it has not provided any indication that such testimony would require a different disposition of the case. Finally, Webco's reliance on Chainworks' price negotiations with Iljin on a subsequent contract is misplaced. Chainworks' dealings with its subsequent supplier in an unrelated contract are not relevant to the contract between Webco and Chainworks. With regard to the counterclaims, Webco simply offers similar arguments to those already addressed in the Court's previous opinion and fails to demonstrate that reconsideration of the previous decision is required.

Accordingly, Webco's motion for reconsideration is denied. An order will be entered consistent with this opinion.

Date:   May 31, 2006            /s/ Robert Holmes Bell
                                ROBERT HOLMES BELL
                                CHIEF UNITED STATES DISTRICT JUDGE